UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRYSTAL PRISCILLA KEITH,

                    Plaintiff,

        v.                                          Case No. 22-cv-548-pp

SHELLY CARLSON,

                    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DKT. NO. 15)**

Plaintiff Crystal Priscilla Keith, who is representing herself, is proceeding

under 42 U.S.C. §1983 on an Eighth Amendment claim against an official at

Wisconsin Resource Center (WRC). The defendant has moved for summary

judgment. Dkt. No. 15. The court finds that there are genuine disputes of fact,

and that summary judgment is not appropriate. The court will deny the

defendant's motion and schedule a status conference to discuss next steps.

**I.      Facts**

        **A.      Procedural Background**

On May 6, 2022, the court received the plaintiff's complaint against

defendant Shelly Carlson. Dkt. No. 1. The case was assigned to Judge

Stadtmueller, who screened the complaint and allowed the plaintiff to proceed

on an Eighth Amendment claim against the defendant for her alleged

indifference to the risk that the plaintiff would harm herself. Dkt. No. 8.

After defense counsel entered an appearance and answered the complaint, Judge Stadtmueller issued a scheduling order setting deadlines for the parties to file amended pleadings, complete discovery and file dispositive motions. Dkt. No. 14. Judge Stadtmueller ordered the parties to "meet and confer at least thirty (30) days prior to filing" a motion for summary judgment. Id. at 2. In lieu of a facts section in their briefs, Judge Stadtmueller ordered the parties to "submit a single, agreed-upon statement of facts . . . consisting of only material facts and the minimum necessary contextualizing facts." Id. Judge Stadtmueller ordered the parties to separately itemize any disputed facts and support those disagreements by providing "each party's separate pinpoint citation to the record." Id. He explained, "If the parties cannot agree upon a set of facts, or if any of the disputed facts are material, then summary judgment is not appropriate." Id. at 3 (citing Federal Rule of Civil Procedure 56(a)). Judge Stadtmueller ordered the parties to file motions that complied with those rules no later than October 2, 2023. Id.

At the October 2, 2023 deadline, the defendant filed her motion for summary judgment. Dkt. No. 15. She also filed with the court a notice that on August 31, 2023, the parties had conferred regarding the joint statement of undisputed facts (JSUF). Dkt. No. 19. Defense counsel asserts that the plaintiff "agreed to and signed the JSUF, which is taken solely from the certified medical records in this case." Id. Defense counsel says that he "had institution staff deliver a Certificate of Conference to Plaintiff to sign affirming that the parties had conferred regarding the JSUF," but that he "was informed that

Plaintiff will not sign the Certificate of Conference." Id. The plaintiff separately filed a notice confirming that she had refused to sign the Certificate of Conference because defense counsel did not meet with her in person to sign that form; she stated that she understood that the parties were to certify in writing that they met and conferred before filing a dispositive motion. Dkt. No. 20.

On March 18, 2024, Judge Stadtmueller issued an order recounting that the plaintiff had not responded to the defendant's summary judgment motion. Dkt. No. 23. Judge Stadtmueller gave the plaintiff "a final opportunity to respond to the pending summary judgment motion" and ordered her to file her materials in opposition to the motion by April 17, 2024. Id. at 1. Judge Stadtmueller warned the plaintiff that her "failure to do so [would] result in the Court deciding the motion without Plaintiff's input." Id. He also ordered the plaintiff to "thoroughly explain any issues Plaintiff has with the joint statement of facts or the parties' summary judgment conference." Id. at 1–2. On April 18, 2024, the court received the plaintiff's brief in opposition to the defendant's motion for summary judgment. Dkt. No. 24. The plaintiff attached exhibits to her brief, dkt. no. 24-1, but did not file a separate statement of proposed facts.

On June 11, 2024, Judge Stadtmueller issued an order recusing himself from further participation in this case under 28 U.S.C. §455(a). Dkt. No. 26. The case was randomly assigned to this court for all further proceedings. See Dkt. Entry of June 11, 2024.

B.  Factual Background

1.  *Plaintiff's Complaint*

The plaintiff filed her complaint on the court's form for incarcerated persons proceeding without an attorney. Dkt. No. 1. The plaintiff signed the complaint and "declare[d] under penalty of perjury that" its contents are "true and correct." Id. at 5. The court treats the verified complaint as "the equivalent of an affidavit for purposes of summary judgment, because it 'contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion.'" Beal v. Beller, 847 F.3d 897, 901 (7th Cir. 2017) (quoting Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996)).

The complaint alleges that on January 16, 2022, the plaintiff told unspecified staff at WRC that she did not "feel like [she] could be safe in [her] cell" and asked that they place her on observation. Dkt. No. 1 at 2. She alleges that she "was placed in a time out status in a[n] observation cell" and "was told that if [she] felt safe the next day [she] could return to [her] unit." Id. The plaintiff alleges that the next day, she "still didn't feel like [she] could be safe." Id. WRC staff tried to move her out of her observation cell, but she "told them that if [she] move[d] [she] [would] safe [*sic*] harm." Id. WRC staff removed the plaintiff's property from her cell, placed her back on observation status and contacted defendant Carlson, whom the plaintiff says is a PCS.[1] Id.

---

[1] The plaintiff does not clarify what a "PCS" is, but the court infers that it may refer to Psychiatric Care Staff or Psychiatric Care Supervisor.

The plaintiff alleges she told the defendant that she would self-harm, that she did not feel safe and that she "wanted to remain in the observation cell to be monitored by staff and a camera." Id. at 2–3. She says the defendant "still tried to remove [her] and send [her] back to [her] unit," even though she told the defendant three times that she was "not safe" and that she would "engage in trying to harm [her]self." Id. The plaintiff says that the defendant did not contact on-call psychological staff "to report that [she] felt suicidal." Id. She says she "told [her]self [she] will return to [her] unit and [she] will kill [her]self" because the defendant continued to tell the plaintiff to leave observation. Id.

The plaintiff alleges that when she returned to her unit, she "found a metal sharp thing and [she] tried to cut [her] arm to get to the artarery [sic] to kill [her]self." Id. She says she cut herself "[six] inches down [her] arm but [she] couldn't get deep enough." Id. The plaintiff alleges that she "was hurt" and "felt helpless" and "like [her] life didn't matter." Id. She says she asked the defendant why she allowed the plaintiff to leave observation, and the defendant "didn't really have a[n] answer." Id. The plaintiff alleges that she "suffered with the cut on [her] arm in pain for awhile [sic]." Id. She says that the scar "is still [t]here 6 inches long and dark brown." Id.

2. *Joint Statement of Undisputed Facts*

The JSUF provides that Nurse Andrea Lynch saw the plaintiff just after midnight on January 17, 2022, after she self-reported cutting her left arm. Dkt. No. 17 at ¶1. Lynch noted that the plaintiff "had two superficial cuts that ran the length of her inner forearm." Id.; Dkt. No. 18-1. Her arm showed "some

redness and scabbing, but no blood was visible." Dkt. No. 17 at ¶1; Dkt. No. 18-1. Lynch avers that a superficial wound "does not penetrate the deeper layers of the skin and is a minor injury." Dkt. No. 18 at ¶8.

Lynch advised the plaintiff to apply Bacitracin ointment to her arm for seven days "[t]o prevent the scratch from becoming infected." Dkt. No. 17 at ¶¶2–3. The plaintiff's medical records show that she had no further medical treatment that day. Id. at ¶4.

### 3. *Plaintiff's Exhibits*

The plaintiff did not submit a statement of proposed facts or a declaration providing her version of the events. Her brief opposing the defendant's motion for summary judgment brief is not verified or sworn to be true under penalty of perjury. Dkt. No. 24. The arguments in the plaintiff's brief are not evidence sufficient to defeat the defendant's motion for summary judgment. See Beatty v. Olin Corp., 693 F.3d 750, 754 (7th Cir. 2012) (noting that the nonmoving party "needs to come forward with *evidence*" demonstrating her entitlement to relief sufficient to "support a jury's verdict in [her] favor"; Cooper v. Haw, 803 F. App'x 942, 946 (7th Cir. 2020) (explaining that "argument alone is insufficient to avoid summary judgment"). But the plaintiff provided additional evidence in three exhibits attached to her response brief, which are mixed among copies of Lynch's affidavit and the same page of the plaintiff's medical records that the defendant provided. Dkt. No. 24-1.

The first additional exhibit is a page of the plaintiff's medical records from WRC. Id. at 1. The top two-thirds of this exhibit is dated February 17,

2022, one month after the incident underlying this lawsuit, and it describes the plaintiff's two "Suicide Attempts." Id. The first is the underlying incident from January 16, 2022. Id. The exhibit says this attempt involved a "superficial scratch on her left forearm," and it describes the "Suicide Method." as "superficial cut on left forearm." Id. The exhibit does not list a description or date for the second suicide attempt, but it lists the "Suicide Method" as "Pills/Overdose." Id. The exhibit says the plaintiff has been diagnosed with "Persistent Depressive Disorder and PTSD which contribute to her ongoing self-harm, and suicidal ideation." Id. It says she has an "[e]xtensive history of non-lethal self-injurious behavior" and a "Moderate" risk level. Id. The bottom third of the page is dated June 16, 2021, and it contains a note from the plaintiff's Intake Assessment that says, "Suicidal Ideation and Risk Assessment." Id.

The second exhibit is an email from the defendant to Department of Health Services employees providing a timeline of the plaintiff's self-harm on January 15 to 16, 2022. Id. at 2. The timeline notes that on January 15, the plaintiff reported to "PCS Retzlaff that she is struggling with self-harm thoughts and wants to go into OBS [observation status]." Id. Retzlaff (not a defendant) moved the plaintiff into observation cell W22 "two doors away from resident CP." Id. The timeline notes no issues during first shift on January 16. Id. Second-shift staff asked psychological services staff about moving the plaintiff "Down the hall," which the defendant said she "would support . . . if they [the plaintiff and CP] are talking inappropriate." Id. At 1500 hours (3:00 p.m.) on January 16, staff named "A Gruse" angrily reported to the psychological

services office that the plaintiff and CP "are girlfriends and the only reason [the plaintiff] came over to W22 was to see CP." Id. He told the plaintiff that he was moving her down the hall, and she replied that she "will self harm down the hall it is too loud." Id. Gruse complained that "this move should of never happened last night." Id. The defendant told Gruse that the plaintiff and CP were quiet that day, but she would talk with the plaintiff. Id.

At 1515 hours (3:15 p.m.), the defendant arrived at the plaintiff's cell, where she noticed that Gruse had taken the plaintiff's blankets. Id. The plaintiff asked the defendant "why second shift came in and messed with her." Id. The defendant asked the plaintiff if she felt safe and explained "what a GP time out is." Id. The plaintiff told the defendant that "she just need[ed] another night away and for it to b[e] quiet." Id. The defendant also spoke with CP about a "prior bed placement." Id. The defendant returned to the plaintiff's cell, and the plaintiff told the defendant that she wanted "to go back, [she] was basically sleeping all day and [she is] being messed with by second shift." Id. The defendant told the plaintiff "that she [could] stay and ask[ed] her if she felt safe." Id. The plaintiff "said yes please take me back to W20 [*sic*]."[2] Id.

At 1815 hours (6:15 p.m.), "W20 [*sic*] staff" asked the defendant to come talk to the plaintiff. Id. The defendant met with her "in Tom's office," and the plaintiff again asked the defendant "why she was being bothered by second shift." Id. The defendant told the plaintiff that "she could of stayed" and that

---

[2] It is possible this should be W22, which is the unit or cell where staff housed the plaintiff on observation status.

Case 2:22-cv-00548-PP   Filed 07/03/24   Page 8 of 20   Document 27

the defendant "[would] tell Tom about [the plaintiff's] experience." Id. The plaintiff told the defendant that "she [would] be safe bu[t] [didn't] understand any of it." Id. The defendant asked the plaintiff if she needed anything "such as coloring sheets or a phone call." Id. The plaintiff "said no that she would be fine." Id. But at 2230 hours (10:30 p.m.), the plaintiff submitted a request to the Psychological Services Unit (PSU) "stating she self harmed on second shift but did []not tell staff." Id.

The third additional exhibit is a decision from the Office of the Secretary dated April 5, 2022. Id. at 5. The decision declines to accept a corrections complaint examiner's recommendation to dismiss the plaintiff's appeal from the denial of an institutional complaint and instead affirms the plaintiff's appeal. Id. The decision notes:

> [T]he DAI Psychology Director and the WRC Director have reviewed the handling of this situation and have determined that PSU staff should be consulted when making a decision about whether a person is to be placed into observation for self-harm threats or actions. In this situation, PSU was not contacted regarding the complainant's reports of urges to self-harm. It appears that staff decided to place her in an observation cell for closer monitoring without changing the status to clinical observation. PSU was not called to consult about this decision. When the complainant later engaged in self-harm, staff made the decision not to place her in observation without consulting with PSU.

Id. The plaintiff also attached the second page of this decision, which has no additional details. Id. at 13.[3]

_____

[3] The plaintiff attached to her complaint the remainder of the institutional complaint report, which includes the institutional complaint examiner's recommendation to dismiss her complaint, the reviewing authority's decision accepting that recommendation and dismissing the complaint and the

## II.   Discussion

### A.   Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

### B.   Eighth Amendment

The court analyzes the plaintiff's claim under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated

---

corrections complaint examiner's recommendation to dismiss the plaintiff's appeal. Dkt. No. 1-1. She did not attach her complaint or appeal.

person must show that she "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from the incarcerated person's act or threat of self-harm "up to and including suicide." Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018).

The subjective component of an Eighth Amendment violation requires a plaintiff to demonstrate that the official acted with the requisite intent, that is, that she had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). But "an official's failure to alleviate a significant risk that [s]he should have perceived but did not" does not amount to cruel and unusual punishment. Farmer, 511 U.S. at 838. Similarly, "[e]vidence that the defendant responded reasonably to the risk, even if [s]he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference." Rasho v. Jeffreys, 22 F.4th 703, 710 (7th Cir. 2022) (citing Farmer, 511 U.S. at 844; and Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002)).

In short, the evidence must show the prison officials' "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45). This standard imposes "a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare

in the face of serious risks.'" <u>Rasho</u>, 22 F.4th at 710 (quoting <u>Rosario v. Brawn</u>, 670 F.3d 816, 821 (7th Cir. 2012)).

C. <u>Analysis</u>

It is undisputed that the plaintiff's self-harm produced only superficial cuts. It is undisputed that a nurse treated the plaintiff's cuts within hours. The nurse noted that the plaintiff's arm was red and scabbed but was not bleeding. She advised the plaintiff to apply ointment to prevent infection, but she did not bandage or wrap the plaintiff's arm or provide any other treatment.

The defendant asserts that the plaintiff "fails to show an injury that is sufficient to maintain an Eighth Amendment claim." Dkt. No. 16 at 2. The defendant relies heavily on <u>Lord v. Beahm</u>, 952 F.3d 902 (7th Cir. 2020), and other Seventh Circuit cases that cite and discuss <u>Lord</u>. Dkt. No. 16 at 2–3 (discussing cases). The defendant asserts that the plaintiff's claim fails as a matter of law because she "'has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury.'" <u>Id.</u> at 2 (quoting <u>Lord</u>, 952 F.3d at 905). The defendant asserts that the undisputed facts show that the plaintiff's "injury from the January 16, 2022, incident consisted only of superficial scratches treated solely with ointment." <u>Id.</u> at 4. The defendant concludes that, "[u]nder binding Seventh Circuit case law, this is insufficient to state an Eighth Amendment claim," and that the court must grant her motion and dismiss this case. <u>Id.</u> The defendant does not address the subjective component of an

Eighth Amendment claim and does not discuss whether the defendant perceived but reasonably responded to the plaintiff's threats of self-harm.

This court recently explained in another self-harm case that <u>Lord</u> applies only where the plaintiff asserts "that [she] posed a *risk to* [*her*] *life* and that the defendant was deliberately indifferent to that risk." <u>Knight v. Lange</u>, Case No. 21-cv-616, 2022 WL 16715977, at *10 (E.D. Wis. Nov. 4, 2022). The analysis from <u>Lord</u> does not apply where the plaintiff asserts only that the defendant was "deliberately indifferent to the plaintiff's *risk to harm* [*herself*]." <u>Id.</u>

The court finds, like in <u>Knight</u>, that <u>Lord</u> is not controlling here. The plaintiff's complaint alleges that she repeatedly told WRC staff, including the defendant, that she did not feel safe and would self-harm if she were moved out of observation status. Dkt. No. 1 at 2. She alleges that she told the defendant three times that she did not feel safe, would self-harm and wanted to remain on observation status. <u>Id.</u> at 2–3. She alleges that she repeated her threats to "engage in trying to harm [her]self" after the defendant continued to try to remove her from observation status. <u>Id.</u> at 3. The only references to suicide are the plaintiff's allegations that the defendant failed to contact on-call psychological staff "to report that [she] felt suicidal" and that the plaintiff "told [her]self" that she would return to her unit and "[would] kill [her]self" because of [the defendant's] actions. <u>Id.</u> Similarly, WRC considered the January 16, 2022 incident to be a suicide attempt a month later in the plaintiff's medical records. Dkt. No. 24-1 at 1. But the plaintiff *does not* allege that she ever told the defendant or other WRC staff that she was suicidal or that she planned to

kill herself if she were removed from observation status. She alleges only that she told WRC staff and the defendant that she would harm herself or attempt to harm herself.

This case in indistinguishable from another that this court recently decided. In <u>Wiegand v. Turck</u>, Case No. 21-cv-505, 2023 WL 3170183, at *2 (E.D. Wis. Apr. 28, 2023), there the plaintiff alleged that staff at Green Bay Correctional Institution refused to move him onto observation status after he told them "that he was having disturbed thoughts and needed to be placed on observation status to prevent him from harming himself" (quotation omitted). He alleged that after officials left and failed to notify appropriate staff about his threats, he yelled "that he would cut himself and then did cut himself." <u>Id.</u> The court observed that the plaintiff "does not describe the severity of his cuts, and the court cannot determine from his allegations whether his threats were sincere or a passing bid for attention couched as a threat to harm himself." <u>Id.</u> The evidence later showed "that the plaintiff's self-harm produced only superficial cuts." <u>Id.</u> at *5. The court nonetheless concluded that <u>Lord</u> was inapplicable. <u>Id.</u> The court described its decision in <u>Knight</u> and explained that the plaintiff in <u>Wiegand</u> alleged that he experienced "a mentally disturbed mind frame such as feeling suicidal, the urge to self-harm and or hurt others." <u>Id.</u> But the court recounted that the plaintiff *did not allege* that he "communicated to the defendants a fear for his life; [the plaintiff] allege[d] only that he told the defendants that he was afraid he might harm himself or others." <u>Id.</u> Because the plaintiff carried out his threat and cut himself with a razor, the court found

that the plaintiff had satisfied the objective component of his Eighth Amendment claim. Id.

The court's conclusion here is the same as in Wiegand. The plaintiff alleges that she had what she describes as suicidal thoughts, but she does not allege that she ever communicated to the defendant a fear for her life or a threat to attempt to take her life. Lord is therefore inapplicable. Although the plaintiff inflicted what Nurse Lynch later described as only superficial cuts, "[t]here can be no question that cutting one's wrist with a [piece of sharp metal] poses a serious risk of harm." Wiegand, 2023 WL 3170183, at *5. The only remaining question is whether the defendant was "aware of the risk that the plaintiff posed to h[er]self" and "'failed to respond reasonably to that known risk.'" Id. (quoting Knight, 2022 WL 16715977, at *10).

The defendant did not submit any evidence discussing whether she was aware of the risk that the plaintiff posed to herself, such as a declaration providing her version of the events. The plaintiff did not provide a declaration either, but she did provide evidence in her verified complaint and in the exhibits attached to her brief in opposition to the defendant's motion for summary judgment about what happened between her and the defendant. Those documents create a genuine dispute of fact whether the defendant was aware that the plaintiff posed a serious risk to herself. The complaint alleges that the plaintiff personally told the defendant three times that she did not feel safe and would self-harm if she were moved off observation status. The plaintiff's attached page of medical records shows that she had an extensive

history of self-harm. Dkt. No. 24-1. Those documents would allow a reasonable jury to conclude that the defendant was subjectively aware of a serious risk to the plaintiff's health based on her threats and her history of following through on similar threats. But the defendant's email timeline suggests that the plaintiff never personally told the defendant that she felt unsafe and would self-harm. It suggests that the plaintiff told *other staff* that she felt unsafe; she told the defendant at least twice that she felt safe but was concerned that second-shift staff were bothering her. These facts could allow a reasonable jury to conclude that the defendant was not aware that the plaintiff posed a serious threat to harm herself on January 16, 2022.

The defendant also did not submit any evidence regarding whether she acted reasonably in response to the plaintiff's threats. Again, the plaintiff's verified complaint and exhibits create a dispute of fact as to whether she did. The complaint alleges that the defendant returned the plaintiff to her unit despite her threats to self-harm and failed to contact on-call psychological staff about the plaintiff's threats. The plaintiff also submitted evidence suggesting that the defendant did not act reasonably. As the court discussed above, the Office of the Secretary rejected the recommendation to dismiss the plaintiff's appeal from the dismissal of her institutional complaint and instead affirmed the appeal, noting that PSU staff "should be consulted when making a decision about whether a person is to be placed into observation for self-harm threats or actions." Dkt. No. 24-1 at 5. The defendant provided no evidence—not even a declaration—explaining why she did not contact on-call psychological staff to

report the plaintiff's threats of self-harm or for guidance about the plaintiff's housing placement.

The defendant's email timeline that the plaintiff attached to her response brief suggests a different version of the events. That timeline shows that the defendant twice spoke with the plaintiff in person (at 3:15 p.m. and 6:15 p.m.), and both times the plaintiff assured the defendant that she was safe or felt safe. But at 10:30 p.m., the plaintiff submitted a request slip to the PSU saying that she self-harmed and did not tell anyone. This version of the events suggests that the defendant acted reasonably by speaking to the plaintiff on two occasions and ensuring that she felt safe, but the plaintiff still harmed herself. The defendant would not be liable if this is what happened. See Farmer, 511 U.S. at 844; Rasho, 22 F.4th at 710.

A reasonable jury could believe either version of the events. It could believe the plaintiff's version in her verified complaint—that the plaintiff told the defendant three times that she would self-harm if she were moved off observation; that the defendant unreasonably disregarded the risk of self-harm, moved the plaintiff off observation and failed to report plaintiff's threats to psychological staff; and the plaintiff ultimately cut herself (albeit superficially) with a piece of sharp metal. A reasonable jury also could disbelieve the facts in the complaint and instead believe the version of events in the defendant's email timeline—that she learned about the plaintiff's threat to harm herself, twice spoke with the plaintiff about her concerns and was assured by the plaintiff that she felt safe but that the plaintiff nonetheless self-harmed that evening.

The court cannot determine which version of the events is the correct one. That is for a jury to decide. See Omnicare, Inc. v. UnitedHealth Grp., Inc., 629 F.3d 697, 704–05 (7th Cir. 2011) ("[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." (quotation marks and internal citations omitted)).

D.    Qualified Immunity

The defendant asserts that even if the court determines there is a genuine dispute of fact on the plaintiff's Eighth Amendment claim, she is entitled to qualified immunity. Dkt. No. 16 at 4. She contends that the plaintiff "cannot meet her burden to show that it was clearly established that [the defendant] violated the Eighth Amendment by ignoring a self-harm risk that amounted to superficial scratches." Id. The defendant asserts that "the opposite is true," and "clearly established precedent" forecloses her from arguing "that she has a cognizable injury under the Eighth Amendment." Id.

Qualified immunity "'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Figgs v. Dawson, 829 F.3d 895, 905 (7th Cir. 2016) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted)). Qualified immunity is an affirmative defense. To defeat the defendant's assertion of qualified immunity, the plaintiff must show that 1) the defendant violated her constitutional right and 2) the right at issue was clearly

established at the time of the violation. Pearson, 555 U.S. at 232. If the plaintiff fails to satisfy either inquiry, then the defendant is entitled to qualified immunity. See Muhammad v. Pearson, 900 F.3d 898, 904 (7th Cir. 2018) (citing Gibbs v. Lomas, 755 F.3d 529, 537 (7th Cir. 2014)). For purposes of qualified immunity, the court views the evidence in the light most favorable to the plaintiff because she is the nonmoving party. See Rainsberger v. Benner, 913 F.3d 640, 647 (7th Cir. 2019).

The defendant asserts that controlling precedent clearly establishes that because the plaintiff inflicted only superficial cuts, her claim must fail. But as the court has explained, the defendant's Lord-based argument is misplaced because Lord does not control where the plaintiff alleges a risk of self-harm, rather than a risk of suicide. The defendant's argument for qualified immunity is similarly rooted in Lord and cases citing Lord, which are inapplicable. The facts alleged in the complaint would allow a reasonable jury to find that the plaintiff posed an objectively serious risk of harm to herself, even though she did not inflict serious injury. The defendant presents no argument for qualified immunity on the subjective element of the plaintiff's claim. For the reasons the court explained above, the evidence would allow a reasonable jury to find in either party's favor on this element and on the plaintiff's Eighth Amendment claim. The defendant has not shown that she is entitled to qualified immunity on the plaintiff's Eighth Amendment claim against her.

## III.  Conclusion

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 15.

The court will set a status conference with the parties to discuss the next steps in this case.

Dated in Milwaukee, Wisconsin this 3rd day of July, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**