UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRYSTAL PRISCILLA KEITH,

                          Plaintiff,

            v.                                              Case No. 22-cv-548-pp

SHELLY CARLSON,

                          Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION (DKT. NO. 40), AWARDING JUDGMENT FOR DEFENDANT AND DISMISSING CASE**

        The defendant filed a motion for reconsideration of the court's July 3, 2024 order denying the defendant's motion for summary judgment. Dkt. No. 40. The plaintiff has not opposed the motion. After reviewing the caselaw cited in the defendant's motion, and the defendant's arguments, as well as the court's own rulings, the court concludes that reconsideration is warranted, that it erred in its July 3, 2024 order and that the defendant is entitled to judgment as a matter of law. The court will grant the defendant's motion for reconsideration and dismiss the case.

**I.      Defendant's Motion (Dkt. No. 40)**

        **A.      <u>Background</u>**

        Plaintiff Crystal Keith filed this lawsuit under 42 U.S.C. §1983 alleging that defendant Shelly Carlson, a correctional officer at Wisconsin Resource Center, violated the plaintiff's constitutional rights by failing to protect her from her self-harm. Dkt. No. 1. On October 2, 2023, the defendant moved for

summary judgment. Dkt. No. 15. In her five-page summary judgment brief, the defendant asserted that the plaintiff could not prevail on her Eighth Amendment claim. Dkt. No. 16 at 1. Relying heavily on <u>Lord v. Beahm</u>, 952 F.3d 902 (7th Cir. 2020), the defendant contended that the plaintiff's claim failed "as a matter of law" because she had "'sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury.'" <u>Id.</u> at 2 (quoting <u>Lord</u>, 952 F.3d at 905). The defendant asserted that "[t]he Seventh Circuit has applied the reasoning in *Lord* in many recent cases" where the evidence showed that an incarcerated plaintiff had suffered only minor harm that required minimal medical attention. <u>Id.</u> at 2–3 (citing cases). The defendant asserted it was undisputed that in this case, the plaintiff's injury consisted of "two superficial cuts" that showed "redness and scabbing, but no blood," which a nurse treated with ointment. <u>Id.</u> at 3–4. The defendant concluded that "[u]nder binding Seventh Circuit case law," the plaintiff's injury was "insufficient to state an Eighth Amendment claim." <u>Id.</u> at 4. The defendant's brief did not address any other element of the plaintiff's deliberate indifference claim.

On July 3, 2024, the court denied the defendant's motion for summary judgment. Dkt. No. 27. After reviewing the undisputed and additional facts, the court recounted that to prove her Eighth Amendment claim, the plaintiff needed to satisfy two elements—first, she needed to show *objectively* "that she 'is incarcerated under conditions posing a substantial risk of serious harm'"; and second, she needed to show that the defendant *subjectively* "'realize[d] that

a substantial risk of serious harm to [the plaintiff] exist[ed], but then disregard[ed] that risk.'" Id. at 10–11 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); and Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). The court explained that the plaintiff's "act or threat of self-harm 'up to and including suicide'" could satisfy the first, objective element. Id. at 11 (quoting Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018)).

The court acknowledged that the undisputed evidence showed "that the plaintiff's self-harm produced only superficial cuts," which "a nurse treated . . . within hours" by providing ointment and no bandage or other wrapping. Id. at 12. But the court disagreed that the analysis from Lord applied "where the plaintiff asserts only that the defendant was 'deliberately indifferent to the plaintiff's *risk to harm* [*herself*].'" Id. at 13 (quoting Knight v. Lange, Case No. 21-cv-616-pp, 2022 WL 16715977, at *10 (E.D. Wis. Nov. 4, 2022)). The court reasoned "that Lord applies only where the plaintiff asserts 'that [she] posed a *risk to* [*her*] *life* and that the defendant was deliberately indifferent to that risk.'" Id. (quoting Knight, 2022 WL 16715977, at *10). The court opined that this case was "indistinguishable from another that this court recently decided," in which the incarcerated plaintiff "did not allege that he 'communicated to the defendants a fear for his life; [the plaintiff] allege[d] only that he told the defendants that he was afraid he might harm himself or others." Id. at 14 (quoting Wiegand v. Turck, Case No. 21-cv-505-pp, 2023 WL 3170183, at *5 (E.D. Wis. Apr. 28, 2023)).

The court reasoned that the outcome it had reached in <u>Wiegand</u> was appropriate in this case. <u>Id.</u> at 15. Although the plaintiff in this case alleged that she experienced "suicidal thoughts," she never "communicated to the defendant a fear for her life or a threat to attempt to take her life. <u>Lord</u> is therefore inapplicable." <u>Id.</u> The court opined that the question in this case— where the plaintiff had expressed a fear of self-harm—was "whether the defendant was 'aware of the risk that the plaintiff posed to h[er]self' and "'failed to respond reasonably to that known risk.'"" <u>Id.</u> (quoting <u>Wiegand</u>, 2023 WL 3170183, at *5; <u>Knight</u>, 2022 WL 16715977, at *10). It recounted that the defendant had presented no evidence "discussing whether she was aware of the risk that the plaintiff posed to herself" or "whether she acted reasonably in response to the plaintiff's threats," and the evidence showed genuine disputes of fact on those questions. <u>Id.</u> at 15–17. Because "[a] reasonable jury could believe either [party's] version of the events," the court denied the defendant's motion for summary judgment and denied her assertion that she was entitled to qualified immunity. <u>Id.</u> at 17–19.

Six days after issuing its order denying the motion for summary judgment, the court issued an order scheduling a status conference to discuss the next steps in the case. Dkt. No. 28. That hearing took place on August 20, 2024. Dkt. No. 30. At that hearing, the plaintiff asked the court to recruit counsel to represent her. <u>Id.</u> Explaining that it might be easier to recruit counsel for mediation than for a trial, the court asked the plaintiff whether she was interested in participating in mediation; she responded that she was. <u>Id.</u>

Defense counsel advised the court that the defendant also would be amenable to mediation. Id. On September 10, 2024, the court signed an order recruiting counsel to represent the plaintiff for mediation only, dkt. no. 31, and on September 16, 2024, the court referred the case to a magistrate judge for mediation, dkt. No. 32. The magistrate judge scheduled the mediation for November 18, 2024. Dkt. No. 33.

On November 11, 2024—a week before the mediation process was scheduled to begin—the defendant moved to withdraw from the mediation. Dkt. No. 34. In a single paragraph, defense counsel stated that he'd informed the plaintiff's counsel of his intention to file the motion to withdraw, and that he did not believe "mediation in this case can be successful and therefore respectfully requests to withdraw and ask[ed] the Court to schedule further proceedings." Dkt. No. 34. The plaintiff's *pro bono* counsel filed a heated response, asserting that the defendant had wasted his time and the court's resources and expressing shock that defense counsel had not made a good-faith effort to at least attempt mediation. Dkt. No. 35. The magistrate judge cancelled the mediation and returned the case to this court. Dkt. No. 36. This court scheduled another status conference for December 11, 2024, so it could discuss with the parties whether the plaintiff wished the court to recruit counsel for trial and how they anticipated the case would proceed. Dkt. No. 37. Five days later, the plaintiff's counsel filed a motion to withdraw because he had agreed to represent the plaintiff only for the purposes of mediation. Dkt. No. 38. The court granted that motion. Dkt. No. 39.

On November 19, 2024—over four months after the court had issued its July 3, 2024 order denying the defendant's motion for summary judgment—the defendant moved for reconsideration of that order. Dkt. No. 40. At the December 11, 2024 status conference, the court asked why "the defendant had agreed to mediation, had attended a hearing where the court had offered to appoint an attorney for the plaintiff and had started the mediation process—all without ever mentioning that the defendant believed the court had erred in the summary judgment ruling." Dkt. No. 42 at 1. Defense counsel responded that when he had "consulted with his supervisors about settlement authority, they questioned why he was considering settlement given the errors in the court's order denying summary judgment." Id. at 1–2. Counsel explained that he then had researched the issue, moved to withdraw from the mediation "to avoid wasting any further time" and filed the motion to reconsider. Id. at 2. The plaintiff—representing herself—said that she received a copy of the motion to reconsider but would not be filing a response. Id. (The court advised the plaintiff that if it decided it agreed with the defendant, it likely would dismiss her case. She acknowledged that she understood this possible consequence. Id.) The court told the parties that "it would research and consider the motion to reconsider and the cases cited in the motion and would either issue a written decision or schedule a date for an oral ruling." Id.

B.    Defendant's Position

In her motion to reconsider, the defendant reasserts that the court should dismiss the case or grant her qualified immunity under Lord "where the

undisputed facts show that the Plaintiff did not have an injury that can sustain a constitutional tort claim." Dkt. No. 40 at 1. The defendant asserts that Lord "does not make any distinction between an expressed threat of suicide and an expressed threat of self-harm," and she maintains that the Seventh Circuit and other district courts have applied Lord whether the plaintiff threatened self-harm or threatened to take his or her life. Id. at 2.

The defendant asserts that the court committed a manifest error of law "by not recognizing that risk of harm (or serious medical need) and cognizable injury are two separate elements of a constitutional tort claim." Id. at 3. She cites cases for the proposition that Lord requires that to state a claim for a constitutional tort, a plaintiff must provide evidence of a cognizable physical injury, and she says that the plaintiff did not submit any evidence showing a cognizable injury. Id. at 4–5. The defendant asserts that the evidence shows that the plaintiff suffered only "scratches treated with an ointment," which is not a cognizable injury. Id. at 5–6.

The defendant discusses this court's previous cases—Knight and Wiegand—on which the court relied in the summary judgment decision. Id. at 6. The defendant argues the court misapplied Lord in those cases, too, and reiterates that "evidence of injury is a separate and distinct requirement from whether a threat of suicide or self-harm was a serious medical need or serious risk of harm." Id. at 7. The defendant says that Seventh Circuit and district court cases decided since Lord (including one from another judge on this court) did not make the distinction this court has made between cases in which the

plaintiff threatened self-harm and cases in which the plaintiff threatened suicide. Id. at 8–10 (citing cases).

The defendant asserts that the Seventh Circuit even has applied the reasoning in Lord in cases that did not involve self-harm, to emphasize "that a plaintiff must show evidence of a recoverable injury" to maintain any constitutional tort claim. Id. at 11–14 (citing cases). The defendant contends that "the overwhelming caselaw demonstrates that the Seventh Circuit has applied *Lord* across many types of cases." Id. at 13. She concludes that Lord's "core holding is that a plaintiff cannot maintain a constitutional tort claim without evidence of a cognizable injury;" the defendant asserts that because the plaintiff in this case did not present evidence of a cognizable injury, the defendant is entitled to judgment as a matter of law or, at a minimum, is entitled to the protection of qualified immunity. Id. at 13–19.

## II. Discussion

### A. Legal Standard

The defendant moves for reconsideration under Federal Rule of Civil Procedure 54(b). That rule provides, in part, that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Motions for reconsideration serve a limited function. They allow the court to correct manifest errors of law or fact, and they allow the plaintiff to present newly discovered evidence that wasn't available before the

8

court ruled. <u>Caisse Nationale de Credit v. CBI Industries</u>, 90 F.3d 1264, 1269 (7th Cir. 1996). They are not a vehicle for losing parties to reargue issues decided against them. <u>Id.</u> at 1270. A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" <u>Oto v. Metro. Life Ins. Co.</u>, 224 F.3d 601, 606 (7th Cir. 2000) (quoting <u>Sedrak v. Callahan</u>, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

      B.    <u>Analysis</u>

As the court explained in the order denying the defendant's motion for summary judgment, a successful Eighth Amendment claim of deliberate indifference requires the plaintiff to satisfy both objective and subjective elements. Dkt. No. 27 at 10 (citing <u>Farmer</u>, 511 U.S. at 834). The objective element requires a showing that the incarcerated person faced a substantial risk of serious harm; the subjective element requires a showing that the defendant was deliberately indifferent to that risk. <u>Id.</u> at 10–11.

The defendant chose to make only a single argument in support of her motion for summary judgment. She based that argument entirely on the portion of the <u>Lord</u> decision that addressed the absence of a cognizable injury. She did not acknowledge or address the objective or subjective elements of a deliberate indifference claim (the one claim on which the court had allowed the plaintiff to proceed, dkt. no. 8 at 5), instead arguing only that to support an Eighth Amendment claim, <u>Lord</u> requires a plaintiff to provide evidence that she suffered a recoverable injury. Dkt. No. 16 at 2. The defendant takes this same approach

in her motion for reconsideration. Dkt. No. 40. Again, she puts all her eggs in the absence-of-cognizable-injury basket, declining to address the objective or subjective elements of an Eighth Amendment claim. Dkt. No. 40 at 1–2. The court understands that the defendant reads certain language in Lord to be dispositive and to obviate the need for her to discuss the elements of a deliberate indifference claim, so the court will begin by reviewing Lord in some detail.

       1.    *The Decision in* Lord

The facts in Lord are worth recounting:

> On December 10, 2017, Correctional Officer Lisa Stoffel was escorting an inmate to the shower when she heard someone call her name. She turned around and saw Lord staring at her from inside his cell while masturbating. Stoffel told Lord he would receive a conduct report and walked away.
>
> Lord then began shouting that he had a razor blade and was going to kill himself. Two inmates submitted declarations confirming that they heard Lord's threat. For their part, however, three correctional officers (defendants Stoffel, Christopher O'Neal, and Joseph Beahm) denied hearing Lord threaten suicide. Officer Christopher Pass provided a different account, acknowledging that at some point he heard Lord say he would kill himself if he was not able to talk to Officer Stoffel. Pass told Lord that his sexual misconduct eliminated any chance of Stoffel returning to his cell
>
> About thirty minutes later, Officer O'Neal saw what appeared to be two blood droplets on Lord's cell door window. O'Neal asked Lord what he was doing. Lord responded by displaying a razor blade and saying he was trying to kill himself. After securing the blade, O'Neil unlocked the door, removed Lord, and walked him to a separate cell. Medical personnel arrived and applied a gauze bandage to the few minor scratches they saw on Lord's forearm. While no further medical treatment was necessary, Lord remained under observation.

Lord, 952 F.3d at 903-04.

The Seventh Circuit began its analysis by recounting the objective and subjective components that a plaintiff must prove to succeed on an Eighth

Amendment claim of deliberate indifference. Id. (citing Farmer, 511 U.S. at 828). It framed the standard this way:

> To establish an entitlement to damages for such a violation, the prisoner must provide evidence that he presented an objectively serious medical need that a defendant correctional officer responded to with deliberate indifference, thereby resulting in some injury. See *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc).

Id. at 904.

The court next characterized as undisputed the propositions that "suicide is an objectively serious medical condition" and that "prison officials cannot intentionally disregard a known risk that an inmate is suicidal." Id. (citing Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019)). It referenced its decisions emphasizing that "policymakers responsible for prison operations must take diligent precautions to respond to and mitigate a meaningful risk of inmate suicide." Id. (citing Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 926–29 (7th Cir. 2004)).

But the appellate court characterized Lord's case as "different," finding that it reflected "an inmate's insincere suicide threat to get attention" from prison staff. Id. at 904–05. The court recounted that Lord was upset because Officer Stoffel wouldn't return to his cell, and that Lord "reacted by screaming that he had a blade and was taking his life, only then to inflict minor scratches." Id. at 905. The court explained that Lord "did not focus his § 1983 claim on these scratches or . . . any other physical injury;" the court said that, "to the contrary," Lord had "focused exclusively on *risk*—on the danger that he presented to himself by having a razor blade and the officers then ignoring his

unmistakable plea that he intended to kill himself." Id. (emphasis in original).
The court agreed with Lord "in one respect," opining that the district court
"may have been too quick to conclude that the facts did not allow a jury to find
that any of the defendant officers heard but failed to respond promptly to
[Lord's] suicide threat." Id. The court reminded readers that two other
incarcerated persons had confirmed hearing Lord threaten to kill himself and
"that evidence shows a factual disagreement." Id.

But the court stated that "this observation"—that Lord had identified a
factual disagreement—"extends no further," because at the summary judgment
stage, Lord needed to show that the differing accounts "left unresolved a
*genuine* dispute over a *material* fact essential to the resolution of liability under
§ 1983." Id. The court opined that "that is where Lord's claim fell short." Id. The
court explained, "Lord's claim fails on the basic proposition that he has sued
for damages under § 1983 and alleged a constitutional tort (an Eighth
Amendment violation) without then developing evidence of a recoverable
injury." Id. (citing Wilson v. Garcia, 471 U.S. 261, 278 (1985), superseded by
statute on other grounds; Gabb v. Wexford Health Sources, Inc., 945 F.3d
1027, 1032 (7th Cir. 2019); Roe v. Elyea, 631 F.3d 843, 864 (7th Cir. 2011);
and Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). The court said that,
unlike the district court, it was not going to "wade into" Lord's credibility
because, even viewing the evidence in the light most favorable to Lord, "[Lord]
did not show that he experienced any cognizable harm." Id. The court
recounted that the evidence showed that Lord's physical "injuries were trivial—

indeed, almost nonexistent," and that Lord had "supplied no evidence that he suffered any other form of injury (for example, psychological harm) from his insincere suicide threat." Id. The court summarized what Lord's summary judgment papers showed: "[H]e wanted to recover money damages solely for the risk to his life—a serious medical need—the defendant officers ignored by not immediately responding to his suicide threat. That risk is not compensable without evidence of injury, however." Id.

The court concluded with the following paragraph:

Today's case presents a clear instance of an insincere suicide threat from an inmate wanting nothing more than attention. But tomorrow's case may entail a fact pattern nowhere near as straightforward. That reality is not hypothetical, for inmate suicide [is] on the rise in our nation's prisons. See E. ANN CARSON, U.S. DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE STATISTICS, MORTALITY IN STATE AND FEDERAL PRISONS, 2001-2016—STATISTICAL TABLES 5 (2020) (providing statistics on the number of deaths by suicide in state and federal prisons and reporting that suicides reached a 15-year high in 2016). It suffices to remind that the Eighth Amendment prohibits prison officials from imposing wanton or unnecessary pain by ignoring an inmate who, whether because of major mental illness or some other serious medical need, goes beyond voicing an idle threat of suicide. Levi Lord fell on the opposite end of the spectrum, and so we AFFIRM.

Id. at 905-06.

Unlike the defendant in this case, the Lord court reviewed the facts relating to the objective and subjective Eighth Amendment standard and acknowledged that there was a factual dispute. Perhaps more relevant to the position this court took in its July 3, 2024 summary judgment ruling (and in its prior decisions in Knight and Wiegand, Lord emphasizes that the plaintiff sued based on "the risk to his life," which the Seventh Circuit held "is not

compensable without evidence of injury." Id. That conclusion makes sense given the facts before the court. There was record evidence that Lord had threatened to kill himself; at least one corrections officer and two incarcerated persons heard it. About half an hour later, a corrections officer observed blood on Lord's cell window; when he asked Lord what he was doing, Lord showed a razor blade and said that he was trying to kill himself. Based on those facts, the Seventh Circuit focused on the question of whether the evidence demonstrated that there *was* a risk that Lord would kill himself.

The facts did not support the existence of such a risk. Lord's threat to kill himself came on the heels of learning that he was facing a conduct report for his inappropriate sexual behavior and his inability to get the officer who'd likely issue that report to come back and talk to him. Although about thirty minutes passed before his threat to kill himself and the time he displayed the razor blade, he managed only to inflict a few minor scratches on himself. The totality of the facts—including the absence of evidence of a "recoverable injury"—demonstrated that Lord was seeking damages for a risk that did not exist and significant injury that did not occur.

The Lord court did *not* address the question of what would constitute a "recoverable" injury in a case where a plaintiff threatened to *harm* himself (or expressed fear that he would harm himself). There was no reason for the Lord court to address that question. Lord had threatened to *kill* himself, not harm himself. The risk of which Lord claimed the officers were aware, and to which

he claimed they were deliberately indifferent, was the risk that he would take his life, not the risk that he might hurt himself.

In this court's eyes, the distinction is important, for the reasons the <u>Lord</u> court explained. Suicide does happen in prisons. If a prison official is aware of a risk that an incarcerated person may kill himself, that prison official is constitutionally obligated not to turn a blind eye to that threat. But the particular facts are relevant in determining whether there was such a risk, and whether prison officials had reason to be aware of it. Some incarcerated persons have a history of suicide attempts known to prison staff. Some have made attempts that have resulted in significant injury without death occurring. Others threaten suicide to get attention and take actions that clearly would not result in suicide (such as scratching the surface of one's arm with a razor or taking three pills out of a full bottle of Tylenol). A court reviews those facts to determine whether there was a risk of *suicide*, whether prison officials had reason to be aware of that risk and whether they were deliberately indifferent to that risk.

But the analysis of risk and indifference in a case involving an incarcerated person who threatens to *kill* himself and then inflicts only superficial injury (especially when he had the opportunity to inflict far more significant injury) is different than the analysis of risk and indifference in a case involving an incarcerated person who threatens to *harm* himself and then does exactly that, even if the injury is minor. The former suggests that the threat was insincere, as in <u>Lord</u>, and officials should not be held liable for a slow or poor response to an insincere threat. The latter suggests that the threat was genuine,

and that the incarcerated person delivered on the threat as announced. <u>Lord</u> did not address the question of whether an incarcerated person who follows through on a threat to harm himself but does not inflict substantial harm can nonetheless state a claim for deliberate indifference to the risk that he might harm himself. Nor did it address the quantum of injury that would be necessary to be a "recoverable" injury in a case where the incarcerated person threatens self-harm and not suicide.

There was no need for the <u>Lord</u> court to address these issues; these facts were not before it. The court provides this explanation only because it believes the defense reads <u>Lord</u> more broadly than its language warrants.

## 2.    Post-<u>Lord</u> Decisions

The defendant asserts that "there is no controlling precedent holding that *Lord* only applies to cases involving threats of suicide and not any other cases." Dkt. No. 40 at 2. That is correct, as far as it goes, but neither is there controlling precedent holding that <u>Lord</u> applies both to cases involving threats of suicide and cases involving threats of harm. In fact, there is no controlling precedent about <u>Lord</u>, full stop. The Seventh Circuit has cited <u>Lord</u> in a published decision only once—a decision about a Title VII dispute in which the court quoted <u>Lord</u>'s description of a genuine dispute of fact. <u>See</u> <u>Runkel v. City of Springfield</u>, 51 F.4th 736, 741 (7th Cir. 2022) ("A dispute of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Lord v. Beahm*, 952 F.3d 902, 903 (7th Cir. 2020), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 . . . (1986)".). The Seventh

Circuit has yet to issue a binding, published decision providing guidance about the range or limitations of Lord.

The defendant lists several *unpublished* Seventh Circuit decisions that cite or discuss Lord, but those orders "are unsigned, are released in photocopied form, are not published in the Federal Reporter, and are not treated as precedents." Seventh Circuit Rule 32.1(b). And these unpublished, nonprecedential orders provide less support to the defendant's argument than she suggests.

a.    Szopinski v. Koontz

The defendant first discusses Szopinski v. Koontz, 832 F. App'x 449 (7th Cir. 2020), issued about nine months after Lord. Dkt. No. 40 at 8. In Szopinski, the plaintiff told prison officials that he was "going to harm himself," would "hurt himself by swallowing his glasses" and "had swallowed one of his glasses temples and that he would swallow the other and cut himself if they did not remove him from his cell." Szopinski, 832 F. App'x at 450. He did not threaten suicide. Id. The district court granted summary judgment in favor of the defendants who allegedly did not prevent the plaintiff from swallowing his glasses. Id. at 451.

The Seventh Circuit affirmed the judgment. Id. The court framed the issue as deliberate indifference "to [the plaintiff's] risk of self-harm." Id. It explained—and the defendant highlights—that prison officials have a duty to protect incarcerated persons "from imminent threats of serious self-harm, and the 'obligation to intervene covers self-destructive behaviors up to and

including suicide.'" Id. (quoting Miranda, 900 F.3d at 349). This statement of law is unremarkable and undisputed.

The Szopinski court then recounted that there was no evidence that the defendants "were aware of [the plaintiff's] history of mental illness or self-harm, or that they had any other reason to believe that his threats to harm himself were genuine, rather than a manipulative ploy to get placed under observation." Id. The court cited Lord only once, for the proposition that "[i]gnoring 'an insincere suicide threat from an inmate wanting nothing more than attention' does not confer liability under the Eighth Amendment." Id. (quoting Lord, 952 F.3d at 905). The court agreed that the "non-emergent nature of Szopinski's threat, and the absence of evidence that the defendants knew he was likely to follow through," did not provide sufficient evidence for a reasonable jury to conclude that the defendants were deliberately indifferent by not immediately responding to Szopinski's threat to harm himself. Id. at 451–52.

This decision says nothing about the requirement to show evidence of a recoverable injury. It focuses on the perceived insincerity of Szopinski's threat to harm himself, and the single citation of Lord supports only that contention.

      b.   Douglas v. Schwartz-Oscar

The defendant next discusses Douglas v. Schwartz-Oscar, Case No. 20-3489, 2021 WL 6102971 (7th Cir. Dec. 22, 2021). Aside from Lord, this is the only decision the defendant discussed in both her summary judgment brief and her motion for reconsideration. Dkt. No. 16 at 2–3; Dkt. No. 40 at 8–9. In

Douglas, the incarcerated plaintiff asserted that medical and prison officials were deliberately indifferent to his threats of "self-harm" and "suicide." Douglas, 2021 WL 6102971, at *1. The district court allowed him to proceed on a claim that officials "failed to respond to his threats of self-harm . . . resulting in physical injury and increasing his risk of suicide." Id. at *2. The district court granted summary judgment for the defendants, finding that the plaintiff had "failed to present any evidence of a recoverable injury" and had showed only that the "cuts were 'trivial' and 'superficial,' never required more than 'ointment and a bandaid,' and did not equate to a cognizable harm under Lord." Id. The district court alternatively concluded that even if the plaintiff "had suffered a cognizable injury, he failed to present evidence that the defendants were deliberately indifferent to the risk of harm he posed to himself." Id.

The Seventh Circuit affirmed the judgment. Id. The court confirmed that the plaintiff had suffered "minor cuts and scratches treatable with band-aids and cream," which "are not cognizable harms under the Eighth Amendment." Id. (citing Lord, 952 F.3d at 905). It then agreed that the defendants did not subjectively "ignore[] [the plaintiff's] risk of suicide by not ordering him restrained in response to each of his threats of self-harm." Id. The court affirmed that "no reasonable jury could find that the defendants ignored an 'imminent risk of death by suicide,' failed to investigate [the plaintiff's] threats of self-harm," or otherwise ignored his threats. Id. (internal citations omitted).

This decision reiterates <u>Lord</u>'s requirement that an incarcerated person must prove "cognizable harm" to sustain an Eighth Amendment claim. But as in <u>Lord</u>, Douglas's threats implied a risk that he would take his life and not merely harm himself. The brief discussion in <u>Douglas</u> does not answer the court's questions about the range or limitations of <u>Lord</u>.

### c. District Court Cases

The defendant next discusses several decisions from other courts in this district and other districts within the Seventh Circuit. Dkt. No. 40 at 9–11. These decisions, like <u>Szopinski</u> and <u>Douglas</u>, are unpublished. Even if they had been, they would not constitute "controlling precedent." <u>See</u>, <u>e.g.</u>, <u>Camreta v. Greene</u>, 563 U.S. 692, 709 n.7 ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.' 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134-26 (3d ed. 2011)."). And like the Seventh Circuit's unpublished decisions, most of these cases do not consider the scope or limits of <u>Lord</u>, or analyze its holding with any granularity.

First is <u>Brown v. Retzlaff</u>, Case No. 21-CV-019, 2023 WL 3963933 (E.D. Wis. Feb. 14, 2023). In <u>Brown</u>, the incarcerated plaintiff asserted that prison officials were deliberately indifferent to his "self-harming," which included cutting and banging his head against a wall. <u>Brown</u>, 2023 WL 3963933, at *1–*2. Judge Dries recounted that the plaintiff "'bears the burden to show that [his] suicidal ideation or the self-harm [he] inflicted was indeed objectively and sufficiently serious.'" <u>Id.</u> at *5 (quoting <u>Jones v. Menning</u>, Case No. 17-CV-

1316-JPS, 2018 WL 2860045 at *2 (E.D. Wis. June 11, 2018)). The court found that the plaintiff's claim failed because the evidence showed that his injuries were "very minor scratches," which "do not rise to the level of a constitutionally cognizable harm." Id. (citing Lord, 952 F.3d at 905). Judge Dries concluded that, "like the plaintiff in Lord, Brown seeks damages solely for the risk to his life that was apparently ignored but '[t]hat risk is not compensable without evidence of injury.'" Id. (quoting Lord, 952 F.3d at 905). As the Seventh Circuit had in Lord and Douglas, Judge Dries focused on the perceived risk to the plaintiff's life but said nothing about whether Lord extends beyond that perceived risk.

The defendant next cites Armstead v. Kollmann, No. 19-CV-101, 2020 WL 206809 (E.D. Wis. Jan. 14, 2020), which was decided by a different judge on this court, Judge Joseph. Dkt. No. 40 at 9. This case pre-dates Lord, so it does not cite or rely on Lord. The defendant asserts that "Judge Joseph granted summary judgment on the basis that the plaintiff had provided no evidence of suffering an actual injury." Id. But that mischaracterizes Judge Joseph's ruling. Judge Joseph found that there was no evidence showing that the plaintiff had "followed through on her threats" to cut herself and inflict a physical injury. Armstead, 2020 WL 206809, at *3. But this was not the basis for her decision; rather, she concluded that the plaintiff's "claim fail[ed] because she ha[d] presented no evidence to support a conclusion that she faced a risk of serious harm." Id. at *4 (emphasis added) (citing Davis v. Gee, 14-cv-617, 2017 WL 2880869 at *3–*4 (W.D. Wis. July 6, 2017)). Judge Joseph

also found that even if the plaintiff had "presented evidence that she faced an objective risk of serious harm when she threatened to cut herself," she had failed to satisfy the subjective element. Id. at *4. The defendant faults this court for "conflating the serious harm element of a failure to protect claim with the cognizable injury element," insisting that "these are two separate elements." Dkt. No. 40 at 7. In her summary description of Judge Joseph's Armstead decision, the defendant commits the same error.

The defendant next discusses Conery v. Pawlyk, Case No. 18-CV-1606-JPS, 2020 WL 5572103 (E.D. Wis. Sept. 17, 2020). Dkt. No. 40 at 9. In Conery, the incarcerated plaintiff had "a history of self-harm" and had sued prison officials for disregarding his "suicidal feelings," "suicidal ideations" and "suicidal thoughts." Conery, 2020 WL 5572103, at *1–*2. In reviewing this claim, Judge Stadtmueller explained that the plaintiff had to prove three elements: 1) that he had "an objectively serious medical condition;" 2) that the defendant subjectively knew the plaintiff "was at substantial risk of committing suicide;" and 3) that the defendant "disregarded the risk which resulted in some injury." Id. at *3 (citing Lord, 952 F.3d at 904, and other cases). Judge Stadtmueller concluded that the plaintiff had not satisfied the objective element. Id. at *4. He discussed Lord in detail, observing that it was not the first decision to conclude "that minor injuries do not constitute an objectively serious medical condition." Id. at *4 & n.1 (citing James v. Cartwright, 659 F. App'x 888, 890–91 (7th Cir. 2016); Flemming v. Breen, No. 19-CV-1166, 2020 WL 4700911 (E.D. Wis. Aug. 13, 2020); and Jones, 2018 WL 2860045). He

described the plaintiff's injury as "minor" and having been inflicted "over several hours alone," suggesting that it was "done as either a coping mechanism . . . or a tactic to manipulate the Defendants." Id. Judge Stadtmueller concluded that, either way, the plaintiff's injury "d[id] not rise to the level necessary to meet the first prong of the Eighth Amendment deliberate indifference standard." Id. He also found that Conery's threat, like Lord's, represented "an insincere threat to get attention or to manipulate others," rather than a genuine suicide attempt. Id.

The last decision the court will discuss in detail is one of its own—Thomas v. Lehman, No. 20-cv-219-pp, 2021 WL 6197895 (E.D. Wis. Dec. 31, 2021). The defendant says that Thomas cites Lord "while holding that being spit on failed to state a cognizable injury under the Eighth Amendment." Dkt. No. 40 at 9–10. The defendant is correct—in Thomas, this court did cite Lord, but the plaintiff had not alleged that prison officials had disregarded his threats to harm himself or kill himself; he had alleged that officials violated his rights by making inappropriate comments in front of other incarcerated persons that "could have increased the plaintiff's risk of harm (physical or psychological) from other inmates." Thomas, 2021 WL 6197895, at *6 (internal quotation omitted). The court explained that there was "no evidence that the plaintiff suffered any physical harm from the defendants' alleged comments." Id. The plaintiff had testified that other individuals once spit on him, but the court found that those events did not "constitute a serious harm entitling him

to compensation under the Eighth Amendment." Id. (citing Lord, 952 F.3d at 905, and DeMallory v. Cullen, 855 F.2d 442, 444 (7th Cir. 1988)).

### d. Other Cases

The defendant concludes her primary argument section by discussing other decisions in which she says the Seventh Circuit applied Lord in "cases not involving self-harm," which she contends demonstrate that Lord does not "only appl[y] where there is a suicide threat, and not a self-harm threat." Dkt. No. 40 at 11–13. But these decisions cite Lord only once or twice and only for a general statement of law. See, e.g., Bolden v. Mezo, Case No. 22-1571, 2023 WL 4488861, at *2 (7th Cir. July 12, 2023) (citing Lord for the general proposition that "[a]n injury is necessary for a constitutional tort under § 1983"); Hubbard v. Mitcheff, Case No. 22-1578, 2022 WL 17369687, at *3 (7th Cir. Dec. 2, 2022) (citing Lord and Gabb, 945 F.3d at 1032, for propositions that the plaintiff "had to present evidence that [the defendant] harmed him" and that the defendant's "inaccurate response exacerbated his" medical condition).

None of these decisions discusses Lord in detail. Rather than showing "that the Seventh Circuit has applied *Lord* across many types of cases," dkt. no. 40 at 13–14, these decisions show only that the Seventh Circuit has *cited* Lord, often in conjunction with another decision, for general propositions of law.

### 3. *The Instant Case*

The defendant asserts that the court misapplied Lord in this case and incorrectly relied on its own past decisions in Knight and Wiegand, which she says also misapplied Lord. The defendant did not cite or contest either of those

24

decisions in her summary judgment brief.[1] She instead cited <u>Lord</u> and unpublished cases since that cite <u>Lord</u> in support of her argument that the plaintiff's injury was insufficient to support an Eighth Amendment claim.

In <u>Knight</u>, this court opined that <u>Lord</u> was not controlling because the plaintiff had "not asserted that he posed a *risk to his life* and that the defendant was deliberately indifferent to that risk." <u>Knight</u>, 2022 WL 16715977, at *10. The court suggested that <u>Lord</u> was controlling only where the plaintiff, as in <u>Lord</u>, "sought damages 'solely for the risk to his life—a serious medical need— the defendant officers ignored by not immediately responding to his suicide threat.'" <u>Id.</u> (quoting <u>Lord</u>, 952 F.3d at 905). The cases the court discussed above do not reach that same conclusion, but neither do they show that <u>Lord</u> is dispositive in *all* self-harm cases, regardless of the threat or the risk at issue, or how. Most of those cases involve threats of self-harm *and* suicide, some of them cite <u>Lord</u> with at least one other case for a broad proposition of law and none of them is controlling precedent that this court must follow.

The requirement that a plaintiff must prove a compensable injury to succeed on an Eighth Amendment claim is not new. <u>See</u> <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)) (under objective element of Eighth Amendment claim, "the deprivation alleged must be, objectively, 'sufficiently serious'"); <u>Collins v. Seeman</u>, 462 F.3d 757, 760 (7th Cir. 2006) (similarly noting that "the harm that befell the prisoner must be objectively,

---

[1] The defendants in those cases did not contest the court's reasoning, but that is because they prevailed; in both <u>Knight</u> and <u>Wiegand</u>, the court concluded that the plaintiffs had not presented evidence of deliberate indifference.

sufficiently serious"). Decisions prior to <u>Lord</u> discussed situations where the plaintiff failed to present evidence showing that he suffered a sufficient injury to satisfy that requirement. <u>See</u>, <u>e.g.</u>, <u>James</u>, 659 F. App'x at 890–91; <u>Jones</u>, 2018 WL 2860045 at *2. <u>Lord</u> took that proposition a step further, applying it to affirm the dismissal of an incarcerated person's Eighth Amendment claim that prison officials were deliberately indifferent to his threats to commit suicide where the incarcerated person's injury is minor or trivial and regardless of how prison officials responded (or failed to respond). <u>See</u> <u>Flemming</u>, 2020 WL 4700911, at *5 (citing <u>Lord</u>, 952 F.3d at 905).

This case is factually different from <u>Lord</u> and cases like it; it is not a case in which there is evidence that an incarcerated person threatened suicide to get attention or to manipulate staff. The plaintiff's medical records reflect that she expressed "suicidal ideation" and "had an extensive history of self-harm," which the medical records describe as "non-lethal self-injurious behavior." Dkt. No. 27 at 6–7, 15–16 (citing Dkt. No. 24-1 at 1). The plaintiff did not make prison staff aware of a "risk to [her] life." <u>Lord</u>, 952 F.3d at 905. She told staff that she did not feel safe in her cell, wished to be placed on observation status to prevent her from *harming* herself and, when she was removed from observation before she said she was ready, followed through on her threat and cut her arm with a metal object. There is no record evidence that the court can find that she had a history of self-harming to get attention or manipulate staff. The defendant did not discuss these factual differences in her summary judgment brief or in her motion for reconsideration; as the court has explained,

26

the defendant chose to focus exclusively on Lord's discussion of compensable harm.

It remains unclear whether Lord is dispositive in the factual scenario presented in this case. The plaintiff told staff that she was concerned about harming herself and that she was not ready to leave observation based on that concern. Staff nonetheless returned her to general population, where she did exactly what she said she was concerned about doing—she harmed herself. It is not clear to *this* court how the Lord analysis of suicide threats that are not supported by evidence of sincerity applies to facts like these.

But the court agrees with the defendant that the Seventh Circuit has said—before Lord, in Lord and since Lord—that a constitutional tort, including the plaintiff's claim of deliberate indifference, cannot proceed without evidence that the plaintiff suffered an objective, sufficiently serious and compensable injury. See Collins, 462 F.3d at 760; Bart, 677 F.2d at 625. It is undisputed that here, the plaintiff's self-inflicted cuts were not a serious injury, did not deeply penetrate her skin and required only ointment to treat. The plaintiff cannot recover damages for that injury, even if her threat to harm herself was genuine.

This does not mean that in the future, incarcerated persons should "try harder" when harming themselves to demonstrate cognizable harm. The lesson of Lord cannot be that the risk to an incarcerated person's life is compensable only when he takes his life or comes perilously close to doing so. Nor does it mean that prison officials must respond the same way to all threats of self-

harm. Courts see a spectrum of self-harm cases, ranging from an incarcerated person who threatens to attempt suicide and then swallows "a handful' of Tylenol pills," Davis, 2017 WL 2880869, at *3; see Lindsay v. Runice, Case No. 16-cv-75, Dkt. No. 46 (E.D. Wis. Apr. 10, 2017), to another who follows through on his suicidal thoughts or threats to harm himself by "paint[ing] the walls with his blood," Fitzpatrick v. Nys, 861 F. App'x 108, 109 (7th Cir. 2021), or hanging himself with a bed sheet, Woodward, 368 F.3d at 925–26. Courts confronting these cases are forced to consider a range of factors to determine whether an incarcerated person's threat to self-harm was genuine and whether a prison official who knowingly disregards that threat may be held liable: Were there previous incidents of self-harm? Has the incarcerated person recently complained about not getting something he wanted? How much time passed between the threats and the harm? How much opportunity did the incarcerated person have to do himself more serious harm?

Lord does not reveal which of these factors are relevant to determining whether an incarcerated person's threat to harm herself was genuine. It focuses on evidence of a compensable injury, holding that if there is none in a case of a suicide threat, officials cannot be held liable and the threat of suicide likely was insincere. This suggests that a compensable injury may be one of several factors that a court may consider in determining whether a suicide threat was sincere and whether officials may be held liable for not properly responding to that threat. That provides little guidance for a case like this one, where the plaintiff

threatened non-suicidal self-harm and then did exactly that—inflicted that harm by cutting herself with a metal object.

But <u>Lord</u> also confirms "the basic proposition" that "evidence of a recoverable injury" is *required* to support a constitutional tort, like an Eighth Amendment violation. <u>Id.</u> (citing <u>Wilson</u>, 471 U.S. at 278; <u>Gabb</u>, 945 F.3d at 1032; <u>Bart</u>, 677 F.2d at 625). Because the plaintiff presented no evidence that she suffered a recoverable injury, she cannot succeed on her Eighth Amendment claim—even if the defendant disregarded valid concerns. In other words, the plaintiff has "nothing . . . to present to a jury at trial," <u>id.</u>, and the defendant is entitled to judgment as a matter of law.[2]

## III. Conclusion

The court **GRANTS** the defendant's motion for reconsideration of its July 3, 2024 order denying the defendant's motion for summary judgment (Dkt. No. 27). Dkt. No. 40.

After reconsideration, the court **GRANTS** judgment as a matter of law for defendant Shelly Carlson and **DISMISSES** this case. The clerk will enter judgment accordingly.

---

[2] Because the court is granting the defendant's motion for reconsideration and dismissing this case on the merits, the court will not discuss her alternate argument that the court should have granted her request for qualified immunity. <u>See</u> <u>Sierra-Lopez v. County</u>, Case No. 17-cv-1222, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (quoting <u>Viero v. Bufano</u>, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and <u>Antepenko v. Domrois</u>, Case No. 17-cv-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)) (noting that "[w]here a defendant 'wins on the facts, [she] does not need qualified immunity'").

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Fed. Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, she will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, she must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff a "strike" if it concludes that her appeal has no merit. If the plaintiff accumulates three strikes, she will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless she demonstrates that she is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of January, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**